The next matter, number 23-1687, Dr. Stephen T. Skoly, Jr. v. Daniel J. McKee, et al. At this time, would counsel for the appellant, Skoly, please introduce himself on the record. Good morning, Your Honors. Gregory Piccirilli, along with my co-counsel, Christy Durant, for the appellant, Dr. Skoly. May it please the Court, thank you, Your Honor. I'm sorry, could I request three minutes for rebuttal? Apologize. This appeal is before this Court from a District Court's granting of a motion to dismiss. Before Dr. Skoly was given an opportunity to engage in any discovery over who made the decision and why to single him out for punishment through what's known as a notice of violation in Rhode Island to prevent him from practicing his dentistry or oral practice. Counsel, the District Court, in fact, made a number of individual rulings. It wasn't just a kind of global motion to dismiss for failure to state a claim. Sometimes the District Court said that the prosecutor had absolute immunity. Others had qualified immunity. Others, there couldn't be any violation because what Rhode Island did conformed with the CDC guidelines. And then the final thing was the notice of enforcement activity being posted was itself government speech. So I think it would be helpful if you would address each of them and start with the one where you think you have the best case. Well, let me start with the issue of immunity because I think that was really the overarching. Which immunity? Start with the absolute immunity with regard to the prosecutor. Dr. Alexander Scott, who was the director of health in Rhode Island at the time, made the decision to issue the notice of violation against Dr. Scholey. This was done one day after Dr. Scholey had made some public comments regarding his opinion regarding the emergency regulation that mandated vaccination. I think, and I'll just preface this with this comment, Judge Lynch, in Penike versus Gismarick, decided in 2019 by this court, the court made it clear that prosecutorial, absolute immunity for prosecutorial conduct, the prosecutorial nature of the act doesn't spread like an inkblot, immunizing everything it touches. Can I go back? I'm sorry. Do you concede that your client was in fact in violation of the regulations? The regulation required that individuals be vaccinated. He steadfastly refused to be vaccinated. Why? So why, if the prosecutor has obviously probable cause, in fact, there's no dispute of noncompliance, why doesn't the prosecutor get absolute immunity? Well, the prosecutor only gets absolute immunity with regard to the prosecutorial functions of actually bringing a complaint. I think that's what the case law shows. However, there are other actions that a prosecutor, or in this case the director, took, which I think removes it from the immunity doctrine. Most obviously is the posting, the initial posting of that notice of violation. The factual background of this case, I think, is very important to understanding exactly how we got to where we are. Dr. Scholey was the only individual to be served with a notice of violation. The record reflects that there were over 800 unvaccinated health care workers who never were prosecuted. The record reflects that there was not one other person who was issued a notice of violation for not being vaccinated. As I understand it, none of those other people announced and stood up and said, I'm violating the regulation. And that's like a lot of people who speed don't get picked up. But if you drive by the cruiser and wave and say I'm speeding, you're probably going to get picked up. I think driving, admitting that you're violating the law by speeding, I think is not the same type of First Amendment protected speech that Dr. Scholey engaged in. When the day before, on the September 30th, the day before the October regulation was going to take effect, the purpose of him going public was to express his concern about the emergency regulation and how it was being implemented, and particularly with regard to himself. Dr. Scholey suffers from Bell's palsy. He's suffered for over 20 years now. He was very concerned that this vaccine was going to exacerbate that problem. And there was evidence that that is true. He has his own doctors and other experts who told him, don't get the vaccine. It will aggravate your Bell's palsy, and if that happens, you probably won't be able to practice again. So he had a very particularized reason for going public and stating that. If the complaint alleged that he had the enforcement action taken against him, after he had said in the paper, by the way, I'm not complying with this ordinance, and that's all he said, I take it, given your answer to Judge Coyote, you'd say no retaliation claim would stand, correct? Well, Your Honor, if I could answer you this way. The Wake case, which was the Selective Service registration case from back in the 1980s, it was a 1985 Supreme Court case, talked about the concept of passive enforcement. Rereading that case, what struck me was the Department of Justice, when that Selective Service Act came into effect, and it became evident that a number of individuals were going to refuse publicly to register, the Department of Justice went through great lengths to try to ensure that they were not going to engage in a passive enforcement that directly infringed upon those objectors' First Amendment rights. They talked about a bank policy, that if someone complained, then they would try to bring them in and negotiate with them. They really went out of their way, the Department of Justice, not to infringe upon those free speech rights. That is actually not what happened here. Missing the point here, I thought your complaint was about the state actively enforcing, posting a notice as the beginning of the enforcement process. Exactly, instead of, again, I can wait where they would, if they had brought Dr. Scrooge in, discussed the reasons why he made the... Oh, I see, the argument is they could not actively enforce, they were constitutionally required to engage in other passive enforcement, is that the argument? I think to protect against... Yes or no. I'm sorry, yes, Your Honor, and if I could expand. So he's admittedly violating the regulation and they can't enforce the regulation because he's complaining about the regulation? That seems an odd result. Well, the proof is in the pudding, Your Honor, because they didn't enforce it against anyone else. And they specifically said, in the record, Dr. Scott specifically said she would not enforce it against anyone. I'm trying to understand, he made a statement that had two components, I'm violating and I don't like the regulation, just to simplify, correct? Yes, and just to be clear, Your Honor, the notice of violation said that Dr. Scrooge claimed he was going to violate the regulation. There was never a hearing that was conducted at either the state level or in the trial court to explain the circumstances of what that meant. That's fine, I'm not talking about that. For the retaliation claim, for simple sake, the record has him making a statement that has the component of acknowledging the violation and criticizing the regulation. Both things, correct? Violating the regulation is a tricky answer because the regulation itself had no enforcement mechanism. There was no penalty provision in the regulation. It said you must do X. Correct. And he did not do X. But if he doesn't do X, what's the implication? Well, that's a separate issue. I'm sorry, I'm making it more complicated than I want to. He makes a statement that says I'm not going to get vaccinated and I'm not vaccinated and I don't like your regulation. Is that a fair summary? That is a fair summary of what's in the notice of violation, yes. And so having made those two statements, does the retaliation claim hinge on them having acted against him because of the criticism or because of the acknowledgement that he's not vaccinated? Yes, Your Honor, you put it exactly better than I intend trying to do. That's exactly our point. Which is the point? The point is that if the purpose of them enforcing it was to infringe upon his right to complain about the regulation, that's improper. Okay. And with respect to that, I take it the argument is that it's clear under established law that when you make a dual statement like that with no other evidence in the record about what motivated the enforcing actor, that it is clearly established that any enforcement action can be understood to be based on the complaint rather than the acknowledgement. I think that's what a trial is for, Judge. I think that's why there's discovery. Well, I guess what I'm saying is that that's sufficient to what else is in the complaint that suffices to show you've plausibly alleged under Iqbal that the retaliation was based on the complaint rather than the acknowledgement? I think there's a number of factors. So what are those factors? One is that there's a statement that was made to my client that if he had just kept his big mouth shut, they wouldn't have gone after him. Who made that statement? I'm sorry, Your Honor? Who made that statement? Governor McKee made that statement. That's alleged? That's alleged in the complaint. Now, it's admittedly hearsay. Again, that's why we have discovery. That they did not enforce it as against anyone else. They admitted that over 800 people remained unvaccinated and remained working. He's the only one they went after because he made a public statement. So just to be clear, the allegation isn't that he said it. The allegation is that other people said he said it? Correct, Your Honor. And doesn't that beg the question? If he said we wouldn't have gone after him if he hadn't opened his mouth. Well, you're back to Judge Barron's question. When he opened his mouth, he said two things, one of which was I'm violating the regulation. We wouldn't have even known he was violating it. I know I'm out of time, but if I could just finish and respond this way. I did not put this in our brief, this case just came to my attention. It was decided in January of this year, January 11th, the 11th Circuit. The case was Warren v. DeSantis. The public may have some knowledge of this case. Governor DeSantis in Florida removed a public prosecutor in Hillsborough County, Tampa, Florida. He did it for a variety of reasons. The trial judge had dismissed the case on absolute immunity grounds. The 11th Circuit overturned that because there was this very question. There were some impermissible reasons why the governor would have removed the prosecutor. The prosecutor's public positions that were contrary to Governor DeSantis. He was pro-abortion and pro-trans rights. Governor DeSantis is not. Governor DeSantis' argument was the reason I got rid of the guy was because he was refusing to enforce state law. It was a factual dispute. The 11th Circuit sent it back to the trial court under the Mount Healthy decision to have a hearing as to whether or not the real reason was that a motion to dismiss case? That was a motion to dismiss. It was on appeal for the same type of immunity. Did the allegations include only that the statement was made? Or was there any allegation about what led them to think that the governor was choosing to act based on the impermissible rather than the potential permissible? As I recall, there were six bases for Governor DeSantis that he gave publicly for why he removed the prosecutor. You know what I'm saying? I have your points. Basically, you can see it's an Iqbal question of whether the complaint did enough to allege that the impermissible ground was the ground. I agree, but Your Honor, again, I would submit that there is more than sufficient evidence for that. There are other arguments, but I'll reserve my time. Thank you. A 28-J on that case? Yeah, I think we'd like a 28-J about the case you just referenced, the 11th Circuit case. I will provide that. Thank you, counsel. At this time, counsel for the appellees, please introduce yourself on the record to begin your 15-minute response. Good morning. May it please the Court. Special Assistant James Arguin on behalf of the defendants appellees. Let me start with the First Amendment claim and the claim for absolute immunity. The plaintiff's claim is based on the decision to initiate a prosecution action based on SCOE's admitted noncompliance with the first emergency regulation requiring all health care providers like him to vaccinate against COVID. The reasons for the initiation of the compliance order are clearly stated in the record appendix page 109-110, which is the notice of the violation and the compliance order issued by Director Alexander Scott. It specifically cites simply two factors. One, that he did not meet Dr. Scholey, was not vaccinated in compliance with the regulation, that he did not meet the medical exemptions incorporated in the regulations, and that he directly indicated that he would engage in patient care activities in which he would subject himself and others to potentially infectious agents to be then transmitted. I thought we had a case, McKusick I think is the case that I'm thinking of, in which we've dealt with this type of question. Although not, I think, in a motion to dismiss, I think that was summary judgment. But in the same type of scenario, there's a clear violation. But I think in that case, the actor had said, I'm going to destroy you one day. And then the question is, are you acting against that person because he was a violator or because he said, I'm going to destroy you one day? Here, when you say the notice of violation says what it's based on, I think the argument is, yes, but that's just what they say. In fact, the action was taken temporarily proximate to a statement which also had criticism of the government. And so is that enough at the 12B6 stage to get them to discovery where they can show, well, that's pretext, what really was motivating it. We're going to find out what they meant when they said, if you didn't open your big mouth, etc. And so it's really just seems to me a little bit of a pause of what's enough to have alleged in the complaint at that early stage when they don't know exactly what motivated it. But they're saying there's enough smoke here to think the motivation was the wrong thing. You don't seem to be disagreeing that if the action was taken because of the criticism, that'd be a problem. I agree that if it were free speech, there is an issue. But this was not the record before the district court. And nor were the allegations in the complaint. Those allegations relating, for instance, to the governor's comments, the governor's alleged role. Now those were based simply on speculation and conclusion. He alleged in paragraph 77 of the complaint that Dr. Scully was informed by an unidentified person that either, and it wasn't just the governor, either the governor or some of his subordinates allegedly made some statement that the enforcement action was brought because Scully opened his big mouth. That was the only allegation contained in the complaint. In his brief, he sort of expands on that at page 48 to say that that means that the governor somehow orchestrated or influenced the prosecution. But there's absolutely no evidence for that. There's absolutely no allegation to support that apart from his speculation. And then just if I ask it this bare way, suppose the complaint, this is what your answer to it, the complaint alleges I made the following two statements. I'm not going to get vaccinated and I'm going to destroy the governor. So those two things. And the complaint's terrible. I mean the regulation's terrible. Next day there is an enforcement action against him. And that's all the complaint alleges. I take it you would say that's not enough to get past motion to dismiss on a retaliation claim. It might be, but that's not the allegation here. The allegation here was I was admitted not in compliance, that they prosecuted me because of my public statements made at Providence Journal. Yeah, but didn't he allege that those statements included criticism of the regulation? At some point he criticized the vaccination policy. But the complaint alleged that he did. In the complaint he cites the Providence Journal article where he made comments and yes, he does make allegations that he was not going to comply. Those were the allegations on which No, but did the complaint allege that he made any statements critical of the regulation? He was critical of the vaccination requirement. Okay. And you're saying that that might be enough to get past 12B6? No, I'm saying that those, I don't believe those are. Because all the allegations go back to his admitted noncompliance with the regulation. That is what the state agencies and the state officials were focused on. Council, when you started you said the notice of violation had three components. He was not vaccinated. He did not meet the criteria for the exception and that he had stated his intention to engage in care for medical patients which would expose them to the risk of COVID. It seems to me that third point is also rather important here. The state was acting irrespective of any hearsay about whether the governor or someone close to the governor said anything, especially since there's no evidence or pleading connecting the governor to the issuance of this notice. The state was acting in emergency conditions to try to keep its population safe from what was potentially a lethal threat. Wasn't this notice didn't the state regulation change? Weren't there three different regulations? There were, Judge. This lawsuit, the remaining aspects of the lawsuit challenged the first emergency regulation that was in effect from October 1st to March 11th, 2022. That's the only regulation that affirmatively imposed vaccine requirement on Dr. Scully as a health care provider, which is something he admitted in his brief. I think what is most, the reasons for the state court decision are stated in the notice of violation and compliance order. What I think is important also is to note that what the state actually did here was initiated an enforcement action based on Dr. Scully's own self-reporting of his violation. And this is where I think it goes back to Your Honor's question, Judge Barron, on the scope of what other reasons may have been out there. Because it ties right into the wait decision that counsel has also cited. Because in wait, the Supreme Court clearly said that the First Amendment does not prohibit the initiation of administrative enforcement actions against persons who self-report violations. Yes, that case did not involve a public health regulation. It involved self-selected service registration. But the reasoning is specifically applicable here. It noted that this kind of prosecution effort or enforcement activities taken against people who self-report their own violations of law made perfect sense because, one, it promotes prosecutorial efficiency. It's based on strong or conclusive evidence of the individual's non-compliance because they've admitted it. And it promotes a general deterrence, especially since failing to proceed against persons who are publicly known offenders would encourage others to violate the law. And what's more important is, to the practical point, Your Honor, that there are reasons in there. His general disagreement with the practice, which there's no allegation specifically that says that was what the State, why the State acted against him. It was because he stated publicly. He didn't allege in his complaint that that was the reason for the action. I beg your pardon? He did not allege in the complaint that the criticism was the grounds by which they chose to prosecute. It was his non-compliance. I see. I got you. Okay. Thank you. But on that practical point, the Supreme Court noted how far the implications would go if the First Amendment argument could be extended to cover everything. It would essentially allow any violator of the law, any person who chose to not comply with the regulation, and I quote the Supreme Court now, to obtain immunity from prosecution simply by reporting himself and claiming that he did so to protest the law. The First Amendment confers no such immunity from prosecution. And that's in the weight decision, 470 U.S., page 612 to 614. So there is no allegation there. The State acted only on the information before it that was self-reported by Dr. Scully. He was admittedly in violation of the regulation, and they took action to enforce it. And I also want to point to respond to the idea that Dr. Scully was the only one prosecuted. That is not true. The record, in fact, shows that a notice of compliance and violation order was also at issue for health care providers in a hospital who refused to comply with the vaccination requirement or failed to timely comply. And that was the issue in the Dr. T case, Dr. T versus Alexander Scott, which is cited in our brief out of the District of Rhode Island. But more importantly, getting back to what was alleged in the complaint, there are no allegations in the complaint to show that Dr. Scully was similarly situated to any of these other allegedly unvaccinated persons. In his brief, Scully actually admits that the status of those persons was completely unknown. There are no allegations in the complaint that those other practitioners or health care providers were subject to the vaccination requirement at all. They may not have even been providing in-person patient care. There is also no indication that they affirmatively self-reported their noncompliance to the department. And there is absolutely no allegation that despite knowing that these individuals were not vaccinated, were practicing in violation of the regulation, and had self-reported their violation, that they, too, were not prosecuted or the department somehow turned a blind eye to it. There is absolutely no case like that, and that is why Scully has no allegations in his complaint to show that he was similarly situated to any of these other persons who allegedly were not vaccinated, yet continued to practice. It's completely unsubstantiated, and it's not even alleged in the complaint. With regard to the website posting, I think the District Court also was correct to focus on the allegations in the complaint, which limited Dr. Scully's challenge to that, to the events taking place after the withdrawal of the notice of violation on March 11, 2022. And there, the District Court correctly followed this Court's reasoning in the Goldstein v. Galvin case, which is cited in our materials. There is no effort to distinguish that, apart from Dr. Scully's assertion that somehow, once the notice was withdrawn, the information was false. And there, I would point simply to the District Court's decision at Record Appendix page 27, or Addendum page 27, where the District Court rejected this claim of falsity, noting that it's not as if they made up the notice of violation. It happened. It was a true statement of historic fact, and it was so that the public could be aware of the public health implications of going to see a doctor who refused to comply with what was an emergency regulation to protect the public health from the spread of COVID. For the remainder of our arguments, I'll rest on our brief. And for all the reasons cited therein, as well as today, we request that the District Court decision be affirmed. Thank you. Thank you, Counsel. At this time, Counsel for the Appellant, please reintroduce yourself on the record. You have a three-minute rebuttal. Thank you, Gregory Piccirilli, again, for the Appellant. With regard to the notice of violation, the notice of violation was misleading. It was misleading because it gave the impression that a final decision had been made on the notice of violation. Importantly, under Rhode Island law, there are only two types of notices of violation. One is an immediate compliance order. That's when there's a danger or risk to the public. A doctor is accused of sexually assaulting his patients, and there's strong evidence of that. The Department of Health can issue an immediate order to stop that person from practicing before there's a hearing. The only other mechanism is a traditional notice of violation compliance order, which is what this was. But those do not become effective until there's a hearing. A hearing before the licensing board that governs that individual. In this case, it would be the Board of Dental Examiners. That is the body that licenses Dr. Scholey. Dr. Scholey was never given an opportunity to have that hearing before the dental board. The dental board may have found that he could continue to engage in the practice, notwithstanding the emergency regulation. They could have found that. They could have made that exception if he was given the opportunity to have a hearing there. Dr. Scott purposely circumvented that process by not giving him the opportunity to go before the licensing board. And that's why if I understand your argument, it's not that there was a problem with the notice. You're making a separate argument that he should have been given a hearing under Rhode Island law, and he was not. Is that correct? Correct. And therefore the notice itself could not become permanent or effective. But they gave the impression by posting it on the website. Okay, this is not a First Amendment claim. I'm sorry? This is not a First Amendment claim. This is a Rhode Island state law claim. Our argument is that is our due process, our second copy. Okay, thank you. But the notice was a proper notice, in the proper form, and it was a public document. Why couldn't they post it on their website? Well, unlike in Goldstein where... And it is what it is. Well, for example, in Goldstein, I think the public posting there was simply what in criminal law you might call the indictment. You publicize the indictment. So and so has been charged with a crime. Prosecutors can do that. They do it every day. Right, but what they can't say is and the person is guilty before trial. Did they say that here? By posting the notice on the website, by their own, by the department's own practice and regulations, they only post notices of violation when they become final. Again, this is the only circumstance. The state hasn't mentioned the Dr. T case. Just so I follow, I know you said to Judge Lynch it was the procedure due process. I thought in your briefing, and I don't know if this is true in the complaint, but I take it the argument would be if there's any force to the point you're making now, it also bears on the retaliation claim. We think all of our claims are intertwined. The equal protection, the due process and the retaliation. Thank you. Just one final point if I may. I know I'm out of time. The Dr. T case. We have no idea what happened in that case. Apparently the trial judge and the attorney for the state were involved in that separate case. There's some offhanded remark about some facility maybe being threatened with a fine if they didn't comply with the regulation. There's no regulation. There was no notice of violation in that case. Thank you. Appreciate your time. Thank you, counsel. That concludes argument in this case.